654 A.2d 1150

COMMONWEALTH of Pennsylvania, Appellant,

v.

Wilfredo LOPEZ, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 11, 1995.

Filed Feb. 21, 1995.

628

Joan Weiner, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Jeremy Ibrahim, Philadelphia, for appellee.

Before BECK, KELLY and HOFFMAN, JJ.

KELLY, Judge:

█ In this appeal, we must determine whether a *prima facie* case of aggravated assault[1] can be established by the Commonwealth against a person who fires eight bullets at the front door of an empty residence. After careful consideration, we hold that a *prima facie* case can be established because it is possible for the Commonwealth to present evidence supporting each element of aggravated assault against such a person. Specifically, a person who discharges a weapon into an empty residence can commit an aggravated assault if he possesses the requisite intent to cause serious bodily injury or bodily injury via the use of a deadly weapon to another, even though it is impossible for that person to actually cause such injury because of the absence of a person inside the residence. Therefore, we reverse the trial court's quashal of the aggravated assault charge leveled by the Commonwealth against appellee, Wilfredo Lopez, and reinstate that charge against him.

The relevant factual history and procedural posture of this case are as follows. At approximately noon on April 7, 1993, appellee approached his former paramour, Luz Balentin, from

1. 18 Pa.C.S.A. § 2702.

behind as Ms. Balentin opened the door to her 928 West Silver Street, Philadelphia, residence. Appellee grabbed Ms. Balentin by the arms and forced her inside of her residence. Appellee then pinned Ms. Balentin against the wall, proceeded to bite Ms. Balentin about the face, neck, and stomach areas, and said "that [Ms. Balentin] should forgive him and that he wanted to be with [her]." N.T. 5/3/93 at 7.

Ms. Balentin rebuked appellee's advances towards her and declined appellee's invitation to rekindle their romantic relationship. Consequently, appellee told Ms. Balentin that he would kill her if he had a gun. After hearing this threat on her life, Ms. Balentin pushed appellee away from her and fled into the streets. Appellee followed Ms. Balentin and told her that "today the battle begins." *Id.* at 9. Appellee immediately proceeded to act out this "battle" by vandalizing Ms. Balentin's son's motor vehicle which was parked in the street near her residence. Appellee then told Ms. Balentin that "the war will continue" and drove away. *Id.* Ms. Balentin was in front of her residence when appellee fled.

Appellee returned to West Silver Street shortly after he had left Ms. Balentin standing in front of her residence. Appellee stood in front of 928 West Silver Street and proceeded to fire eight bullets at its front doors. These bullets went through the doors and into Ms. Balentin's residence. Fortunately for Ms. Balentin, she did not return to her residence after appellee fled. Ms. Balentin hid in her neighbor's residence as appellee shot at the front doors of her residence. No one was injured as a result of this incident.

On May 3, 1993, appellee's preliminary hearing was held in Municipal Court. The Municipal Court determined that the Commonwealth established a *prima facie* case against appellee pursuant to its charges of simple assault,[2] aggravated assault, recklessly endangering another person,[3] terroristic threats,[4] and criminal mischief.[5] The Municipal Court dis-

2. 18 Pa.C.S.A. § 2701.
3. 18 Pa.C.S.A. § 2705.
4. 18 Pa.C.S.A. § 2706.
5. 18 Pa.C.S.A. § 3304.

missed the charges of burglary [6] and criminal trespass [7] leveled against appellee by the Commonwealth.

On May 13, 1993, appellee petitioned for quashal of the aggravated assault charge and the other charges leveled against him by the Commonwealth. Appellee claimed that the Commonwealth failed to establish a *prima facie* case against him with regard to the aggravated assault charge and the other charges. The Court of Common Pleas, on July 12, 1993, quashed only the aggravated assault charge, ruling that the Commonwealth failed to establish a *prima facie* case. The court reasoned that the Commonwealth's case failed to allege sufficient facts to show that appellee intended to inflict serious bodily harm upon Ms. Balentin because she was not inside of her residence when appellee fired eight bullets at its front door. Trial Court Opinion at 3. The Commonwealth filed a timely appeal from the order quashing the aggravated assault charge.

The Commonwealth raises the following issue for our review:

PROPERLY VIEWED IN THE LIGHT MOST FAVORABLE TO THE COMMONWEALTH, DID THE EVIDENCE PRESENTED AT THE PRELIMINARY HEARING ESTABLISH A *PRIMA FACIE* CASE OF AGGRAVATED ASSAULT BY SHOWING THAT DEFENDANT PHYSICALLY ASSAULTED HIS FORMER GIRLFRIEND, THREATENED TO KILL HER, AND THEN FIRED NUMEROUS GUNSHOTS THROUGH HER FRONT DOOR?

Commonwealth's Brief at 4.

The Commonwealth asserts that a *prima facie* case exists to support its charge that appellee committed the crime of aggravated assault. Specifically, the Commonwealth claims that Ms. Balentin's testimony sufficiently proves that appellee attempted to cause her serious bodily injury or attempted to

6. 18 Pa.C.S.A. § 3502.

7. 18 Pa.C.S.A. § 3503.

cause her bodily injury with a deadly weapon. To support this claim, the Commonwealth argues that appellee's state of mind is the critical factor which establishes a *prima facie* case of aggravated assault against him. The Commonwealth further argues that, under the circumstances, the absence of Ms. Balentin or any other person from Ms. Balentin's residence is irrelevant in determining whether a *prima facie* case of aggravated assault lies against appellee. We agree.

 The limited function of a preliminary hearing is to establish a *prima facie* case against the accused. *Commonwealth v. Smith*, 436 Pa.Super. 277, 290, 647 A.2d 907, 913 (1994); *Commonwealth v. Fox*, 422 Pa.Super. 224, 234, 619 A.2d 327, 332 (1993), *allocatur denied*, 535 Pa. 659, 634 A.2d 222 (1993). A *prima facie* case consists of evidence produced by the Commonwealth which sufficiently establishes that a crime has been committed and that the accused is probably the perpetrator of that crime. *Commonwealth v. McBride*, 528 Pa. 153, 157–58, 595 A.2d 589, 591 (1991); *Commonwealth v. Jury*, 431 Pa.Super. 129, 138, 636 A.2d 164, 168–69 (1993); Pa.R.Crim.P. 141(d). In other words, the *prima facie* case in support of appellee's guilt consists of evidence presented by the Commonwealth that, "if accepted as true, would warrant the trial judge to allow the case to go to the jury." *Commonwealth v. Austin*, 394 Pa.Super. 146, 151, 575 A.2d 141, 143 (1990) (citing *Commonwealth v. Wojdak*, 502 Pa. 359, 367, 466 A.2d 991, 995–96 (1983)). Each element of the criminal offense charged must be supported by the Commonwealth's evidence. *Id.* (citing *Commonwealth v. Wojdak, supra* at 369, 466 A.2d at 996–97). Proof of the accused's guilt beyond a reasonable doubt, however, need not be established by the Commonwealth at a preliminary hearing. *Id.* (citing *Commonwealth v. Snyder*, 335 Pa.Super. 19, 23, 483 A.2d 933, 935 (1984)). The Commonwealth satisfies its burden at a preliminary hearing as long as it presents evidence that "establish[es] sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. McBride, supra* 528 Pa. at 158, 595 A.2d at 591 (citing *Commonwealth v. Wojdak, supra*, 502 Pa. 359, 466 A.2d 991).

■ The statute defining the offense of aggravated assault pertinently provides as follows:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

\* \* \* \* \* \*

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon....

18 Pa.C.S.A. § 2702(a)(1), (4). Criminal attempt occurs when a person, "with the intent to commit a specific crime ... does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). The statute defining the *mens rea* of intent states as follows:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1)(i), (ii). The fact that the accused misapprehended the circumstances, thereby making it impossible for him to commit the crime attempted, is not a defense to an attempt crime. 18 Pa.C.S.A. § 901(b).

■■ When no serious bodily injury results from the accused's actions, the Commonwealth must prove that he attempted to cause another to suffer such injuries. *Commonwealth v. Fierst*, 423 Pa.Super. 232, 241, 620 A.2d 1196, 1201 (1993); *Commonwealth v. Everett*, 408 Pa.Super. 166, 169, 596 A.2d 244, 245 (1991), *allocatur denied*, 530 Pa. 639, 607 A.2d 250 (1992). *See Commonwealth v. Elrod*, 392 Pa.Super. 274, 277, 572 A.2d 1229, 1231 (1990), *allocatur denied*, 527 Pa. 629, 592 A.2d 1297 (1990) (proof that the accused attempted to

cause serious bodily injury to another establishes crime of aggravated assault). Attempt, in the context of an assault, is established when the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetrating serious bodily injury upon another. *Commonwealth v. Carter*, 329 Pa.Super. 490, 497–98, 478 A.2d 1286, 1289 (1984); *Commonwealth v. Mayo*, 272 Pa.Super. 115, 127, 414 A.2d 696, 702 (1979). This intent need not be directed at a specific person. *Commonwealth v. Fierst, supra* 423 Pa.Super. at 241, 620 A.2d at 1201 (under the circumstances, aggravated assault existed where accused veered into oncoming traffic lane in attempt to cause collision with another motor vehicle). *See Commonwealth v. Mosley*, 401 Pa.Super. 537, 552, 585 A.2d 1057, 1065 (1991) (firing shots into crowded area constituted attempt to cause serious bodily injury). Moreover, if the accused intends to cause serious bodily injury to another, then proceeds to perform all of the acts necessary to do so, the accused can still be guilty of aggravated assault even though completing an aggravated assault is impossible. *See Commonwealth v. Henley*, 504 Pa. 408, 416, 474 A.2d 1115, 1119 (1984) (accused may be convicted of receiving stolen property even though property is not actually stolen). *See also Commonwealth v. Smith*, 426 Pa.Super. 144, 155, 626 A.2d 614, 620 (1993) (where appellant, with finger on trigger, pointed unloaded gun at victim, pushed victim to floor, and threatened to kill victim, sufficient evidence to support appellant's aggravated assault conviction existed); *Commonwealth v. Chance*, 312 Pa.Super. 435, 443, 458 A.2d 1371, 1374–75 (1983) (where appellant pointed unloaded gun at victim and victim heard gun click several times, sufficient evidence to support appellant's aggravated assault conviction existed); *Commonwealth v. Bond*, 261 Pa.Super. 311, 315–16 n. 2, 396 A.2d 414, 416 n. 2 (1978) (same).[8]

**8.** Other jurisdictions have also concluded that intent to commit a crime coupled with the perpetration of all acts necessary to perform the crime constitutes criminal liability despite the fact that it is impossible to complete the crime. For example, in Indiana, an attempted murder may exist where a person exploded a pipe bomb on the ground floor of a residence even though it was impossible to kill the intended victim because she was asleep upstairs. *Armstrong v. State*, 429 N.E.2d 647,

■ Significantly, circumstantial evidence can prove that the accused intended to inflict serious bodily injury upon another. *Commonwealth v. Fierst, supra* 423 Pa.Super. at 241, 620 A.2d at 1201; *Commonwealth v. Elrod, supra* 392 Pa.Super. at 277, 572 A.2d at 1231 (citing *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (1978)). The finder of fact is free to conclude that the accused intended the natural and probable consequences of his actions to result therefrom. *Commonwealth v. Gerulis*, 420 Pa.Super. 266, 282, 616 A.2d 686, 694 (1992), *allocatur denied*, 535 Pa. 645, 633 A.2d 150 (1993) (quoting *Commonwealth v. Thomas*, 465 Pa. 442, 447, 350 A.2d 847, 849 (1976)).

■ Instantly, the testimony presented by Ms. Balentin at appellee's preliminary hearing clearly establishes a *prima facie* case of aggravated assault against appellee. If the facts presented by the Commonwealth at appellee's preliminary hearing are presented at his trial, the trial judge would be warranted in allowing the jury to determine if appellee attempted to cause Ms. Balentin serious bodily injury or attempted to cause her bodily injury via the use of a deadly weapon. After being rejected by Ms. Balentin, appellee threatened her life; he told her that he would kill her if he had a gun. Appellee continued to threaten Ms. Balentin's safety as she watched him damage her son's motor vehicle; he stated that he considered himself and Ms. Balentin to be engaged in "battle." The last place appellee had seen Ms. Balentin before driving away after damaging her son's motor vehicle was in front of her residence. As appellee drove away, he again threatened Ms. Balentin's safety by telling her that the "war" would continue. This evidence unequivocally demonstrates appellee's intent to harm Ms. Balentin; he considered himself to be at "war" with her.

653–54 (Ind.1982). Additionally, in New York, a person may be guilty of attempted murder where he shoots a victim who may be dead if that person believes that the victim is alive. *Commonwealth v. Dlugash*, 41 N.Y.2d 725, 395 N.Y.S.2d 419, 426, 363 N.E.2d 1155, 1161 (1977), *on remand*, 59 App.Div.2d 745, 398 N.Y.S.2d 560 (1977).

Subsequently, shortly after the incident in front of Ms. Balentin's residence had ended, appellee returned to West Silver Street. Appellee stood in front of Ms. Balentin's residence, the last place where appellant had seen Ms. Balentin before he had driven away, and fired eight bullets into it. A reasonable finder of fact could readily determine from the aforementioned circumstances that appellee intended to cause serious bodily injury to Ms. Balentin or intended to cause her bodily injury with a deadly weapon if the finder of fact concludes that appellee believed that Ms. Balentin was inside 928 West Silver Street when he shot at it. Accordingly, appellee could be convicted of aggravated assault for his actions on April 7, 1993.

Moreover, the fact that it was impossible for appellee to harm Ms. Balentin when he shot at her residence because she was at a neighbor's residence does not necessarily prevent him from being convicted of aggravated assault. If the finder of fact does determine that appellee believed that Ms. Balentin was inside her residence, intended to seriously harm her or harm her with a deadly weapon, and attempted to do so by firing bullets through the front doors of her residence, then a conviction of appellee for aggravated assault would be warranted. Under this scenario, appellee would have intended to commit aggravated assault upon Ms. Balentin and would have performed all acts necessary to do so. Appellee's state of mind, not Ms. Balentin's location, is the key to determining whether he committed aggravated assault upon her and appellee's misconception of the facts cannot eliminate his criminal culpability. Therefore, the Court of Common Pleas erred when it dismissed the charge of aggravated assault against appellee because the Commonwealth presented a *prima facie* case at appellee's preliminary hearing that appellee committed aggravated assault upon Ms. Balentin even though she was not in her residence when he fired at it.

Based upon the foregoing, the order of the Court of Common Pleas dismissing the charge of aggravated assault lodged by the Commonwealth against appellee is reversed and the charge is reinstated.

636

Order reversed; case is remanded for trial. Jurisdiction is relinquished.